**Harold A. & Gail T. RUSSO**

v.

**F & T SERVICES CORPORATION, et al.**

**Civ. A. No. 83–5100.**

United States District Court, E.D. Louisiana.

June 25, 1986.

Gary A. Hemphill, Terriberry, Carroll & Yancey, New Orleans, La., for cross claimant, CF Industries.

James R. Sutterfield and James M. Walker, Camp, Carmouche, Barsh, Gray, Hoffman & Gill, New Orleans, La., for cross-defendant, F & T Services Corp. and third party defendants, London Underwriters.

## ORDER AND REASONS

PATRICK E. CARR, District Judge.

On agreement of counsel and based upon a joint stipulation of fact, the issue of seaman status was taken under submission by the Court. Upon review of the facts as stipulated, the pleadings, and the law applicable to this case, the Court herein enters its order and reasons therefor.

A brief factual and procedural background is in order. The plaintiffs, Harold A. & Gail T. Russo, initially sued Mr. Russo's employer, F & T Services, and CF Industries, the owner *pro hac vice* of the vessel on which the plaintiff was injured. Plaintiff claimed damages under the Jones Act, the General Maritime Law and the Longshoremen's & Harbor Workers' Compensation Act. CF Industries cross claimed against F & T Services seeking indemnity or contribution pursuant to a Maintenance and Unloading Contract and also as a named additional assured under F & T Services' contractual liability policies. Prior to trial in October of 1985, the main claim of plaintiff was settled by CF Industries and F & T Services in its capacity as a direct defendant only. Hence, the only remaining claim is the cross claim by CF Industries. Because of the language contained in the contract and the insurance policies, seaman status remained a viable issue despite the fact that the plaintiff's claim had been amicably resolved.

F & T Services had contracted with CF Industries to provide maintenance and unloading of vessels at the CF Industries phosphate plant in Ama, Louisiana. CF Industries bareboat chartered the M/V JAMIE BAXTER/CF 1 in order to transport

phosphate from Florida to its Louisiana plant.

The plaintiff, Harold Russo, was employed by F & T Services and was injured aboard the M/V JAMIE BAXTER/CF 1 on or about October 17, 1980. The incident occurred on the starboard aft expressway ladder of the vessel as the plaintiff was carrying a bucket or buckets of paint from the tool room to a storage room. At the time of the incident, the vessel was anchored in the Mississippi River discharging cargo.

Plaintiff began his employment with F & T Services in January of 1980. His first position was as a mechanic operator whose duties included operating off-loading equipment. He also performed all of the maintenance work on the cargo loading and discharging equipment. The plaintiff's primary function was to unload the ship and the majority of his time was devoted to that purpose.

During his employment with F & T Services, the plaintiff rode the vessel from Florida to Louisiana, or vice versa, on five or six occasions. During these trips, the plaintiff performed maintenance work in the cargo loading/discharging equipment but had no responsibilities associated with navigation of the ship. The plaintiff rarely, if ever, did work on the vessel and does not hold a maritime license of any kind.

During the last two months of his employment, plaintiff was assigned to work in the tool room of the vessel. He no longer worked as a mechanic operator; and, he no longer rode the vessel to or from Florida. His new duties in the tool room required him to dispense hand tools to his fellow employees engaged in cargo work or maintenance of the cargo handling equipment. Plaintiff was also required to repair tools as needed.

During the nine months of his employment, plaintiff spent 73% of his time in marine related work and the remaining 27% in shore labor of some kind. The secretary-treasurer of F & T Services estimated that the plaintiff spent between 60 and 70% of his marine related work time aboard the M/V JAMIE BAXTER/CF 1 with the remaining portion of his marine time being spent elsewhere 'on water'. This estimate could not be verified.

Although not conclusive evidence of plaintiff's status, the plaintiff did in fact apply for, and receive, benefits under the Longshoremen's and Harbor Workers' Compensation Act. Plaintiff's status as a seaman nevertheless remained at issue.

■ There is no bright line rule for determining seaman status. Rather, all of the facts and circumstances of the claimant's entire employment history must be taken into account. In order to establish himself as a seaman, a claimant would have to prove:

1) that he was assigned permanently to, or performed a substantial part of his work on;

2) a vessel in navigation; *and*

3) that the capacity in which he was employed, or the duty which he performed, contributed to the function of the vessel or the accomplishment of its mission.

*Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir.1986) (*en banc*); *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir.1959).

■ The Court finds as a matter of law that the plaintiff in the case at bar was not a seaman. The plaintiff was not permanently assigned to the vessel in question. Although the plaintiff traveled with the vessel on several occasions, he ceased doing so two months prior to the accident which caused his injury. Additionally, even during the times that plaintiff traveled with the vessel, it was more as a working passenger, for his duties did not involve the transit of the vessel. Rather, his sole duties were maintenance of cargo handling equipment aboard the vessel. Plaintiff also worked aboard other unidentified vessels. At all times his assignment was to maintain the cargo equipment and expedite cargo discharge operations.

The Court further finds that the plaintiff's duties essentially consisted of cargo handling and cargo equipment mainte-

nance, tasks traditionally performed by longshoremen. Hence, based upon the facts as stipulated, the Court finds that plaintiff is not a seaman.